IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH C. NORTHUP,                                    Case No. 2:14-cv-01639-PK

                Petitioner,                        FINDINGS AND
    v.                                               RECOMMENDATION

JERI TAYLOR,

              Respondent.

_____

**PAPAK, Magistrate Judge**.

    Petitioner, a prisoner in the custody of the Oregon Department of Corrections, brings this

habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, this Court

recommends that Petitioner's Habeas Petition (ECF No. 2) be DENIED.

## BACKGROUND

    On January 31, 2006, a grand jury indicted Petitioner on charges of Robbery in the First

Degree (two counts), Robbery in the Second Degree (three counts), and Aggravated Theft in the First

Degree (one count). The charges arose out of robberies of three downtown Portland businesses:

(1) Cutter's Jewelry on January 9, 2006; (2) Portland Swimwear on January 17, 2006; and (3) Pasta Bangs on January 22, 2006. Resp't Ex. 102. The underlying facts of the robberies and the course of Petitioner's trial are as follows.

## I.    The Robberies

### A.    Cutter's Jewelry

Sandra Timm testified she was working at Cutter's Jewelry on January 9, 2006. Tr. Vol. 2 at 22. That afternoon, a man came into the store and said he wanted to look at some jewelry but wanted to buy a coke first. *Id.* at 23. She directed him to a nearby Rite Aid. *Id.* Timm testified the man left the store and returned about ten minutes later with a coke and a cigarette in his hand. *Id.* He stated he was going to finish his cigarette and coke and then he would like to see some jewelry. *Id.*

Timm testified the man returned to the store and she showed him some diamonds. *Id.* After about fifteen minutes of discussion, she noticed the diamond he was looking at was gone. *Id.* at 26-27. The man stated "I have the stone and I'm leaving." *Id.* at 27. Timm testified the man stuck his hand in his coat and said I'm leaving and I have a gun. *Id.*

According to Timm, she described the robber to police as thin, average height, in his fifties, with short "salt and pepper" hair, a gray mustache, and a goatee. *Id.* at 29-30, 44. She told the officer the man was wearing jeans, a black turtleneck, tweed jacket, a knit cap, and glasses. *Id.* at 29, 44-45. Timm testified that she subsequently identified the robber in photographs taken from the Rite Aid video camera. *Id.* at 37; *see also* Tr. Vol. 2 at 154. On January 25, 2006, police also showed her a photo montage and she identified Petitioner as the robber with ninety-eight percent certainty. *Id.* at 37-41, 47-48; *see also* Tr. Vol. 2 at 200. At trial, Timm testified she was one-hundred percent certain of her identification and pointed to Petitioner as the robber. *Id.* at 40, 48-49. She testified that

because she had been robbed before, she paid special attention to customers' facial features. *Id.* at 20-22.

### B.    Portland Swimwear

Amy Stell testified she was working at Portland Swimwear on January 17, 2006. *Id.* at 54, 56. That afternoon, a man entered the store and stated he was looking for his wife. *Id.* at 58-59, 61-62. When Stell told him she was not there, the man indicated he would come back in ten minutes. *Id.* at 59. Stell testified the man returned, they had a brief conversation, and he asked for change for the bus. *Id.* at 59-60, 62, 79-80. When she opened the cash register, the man reached over and grab money out of the till. *Id.* at 60; *see also* Tr. Vol. 2 at 143-44. Stell testified he had a black gun that didn't look real. *Id.* at 60, 64, 67-68.

Stell testified that because she had been robbed before, she paid special attention to the robber's face. *Id.* at 62-64. She described the man to police as white, in his forties or fifties, six feet tall, about 185 pounds, with a dry patch of skin on his face. *Id.* at 66-67; *see also* Tr. Vol. 2 at 147. He was wearing glasses, a straw hat, an overstuffed green jacket, black pants, and "sporty" black shoes. *Id.* at 66, 68-69; *see also* Tr. Vol. 2 at 147. Stell testified she identified Petitioner as the robber in a police photo montage. *Id.* at 72-76, 82; *see also* Tr. Vol. 2 at 200. She testified his "picture jumped off the page." *Id.* at 74. Stell identified Petitioner at trial with one-hundred percent confidence. *Id.* at 77.

### C.    Pasta Bangs

Anastacia Furniss testified she was working at Pasta Bangs, an Italian restaurant, on January 22, 2006. *Id.* at 87-88. That evening, a man entered the restaurant and said he was looking for a woman with brown hair. *Id.* at 90-92, 102; *see also* Tr. Vol. 2 at 129. He left and then returned ten to fifteen minutes later and ordered a beer. *Id.* at 93-94. She set the beer on the counter and opened

the cash register. *Id.* at 94. He jumped across the counter and grabbed money out of the till, leaving a footprint on the counter. *Id.* at 94-99; *see also* Tr. Vol. 2 at 132-33. He had a gun in his left hand. *Id.* at 94.

Furniss describe the robber to police as a white older male, grey hair, thin, six feet tall, with a sore on his mouth. *Id.* at 93, 100-02, 119-21. He was wearing a big green coat and black pants. *Id.* at 101; *see also* Tr. Vol. 2 at 437. She later identified Petitioner in a photo montage. *Id.* at 103-05, 124; *see also* Tr. Vol. 2 at 199. She testified she was one-hundred percent sure of her out-of-court identification and identified Petitioner in the courtroom. *Id.* at 105-06.

## II.    Petitioner's Arrest

On or before January 23, 2006, Petitioner was taken into custody. *Id.* at 156-57. Portland Police Sergeant Troy King testified Petitioner had a large backpack containing a gun, wire-rim glasses consistent with those shown in the Rite Aid video, a black cap, coat, and shoes with a sole comparable to the footprint found on the Pasta Bangs' counter. *Id.* at 162-63, 166-73.

## III.    Pretrial Motion to Sever

Defense counsel filed a pretrial motion to sever the robbery charges for trial on the basis that a consolidated trial would result in substantial prejudice. Resp't Ex. 123. At a pretrial hearing, counsel argued at length that the descriptions of the robber and the *modus operandi* for the crimes were different. Tr. Vol. 1 at 282-86. Defense counsel argued the evidence between the three robberies should not be cross-admissible and failure to sever the trials would deprive Petitioner of the opportunity to testify in *one* case and not the other two (resulting in the admission of his prior felonies in all three cases). *Id.* at 287-90. The trial court denied the motion, opining that a joint trial

was proper under Oregon Revised Statute § 132.560[1] and would not "result in substantial prejudice."

*Id.* at 291. Although the trial court first opined the evidence of the separate robberies would be cross

admissible (*Id.* at 292-93), the court instructed the jury prior to trial to consider each case separately:

> I instruct you that this trial involves the presentation of three separate cases. Each case will be presented by the State separately. Each case must be decided separately. The fact that three cases are being presented in one trial cannot affect the absolute requirement that you must deliberate on each case separately.

> Evidence from one case cannot and must not be used in deciding a separate case. Similarly, the verdict in one case cannot affect the verdict in another case. In other words, when you deliberate one case to verdict, that verdict, whether not guilty or guilty, cannot enter into deliberations on either of the other two cases.

Tr. Vol. 2 at 9-10.

## IV.    **Petitioner's Defense**

Petitioner testified in his own defense. During direct examination, Petitioner testified he came

to Portland in January, 2006, and was living on the streets. *Id.* at 256-57. Petitioner admitted he had

been convicted of four prior felonies. *Id.* at 255. Petitioner testified he did not commit the robberies

at Cutter's Jewelry or Pasta Bangs and he did not know who committed the robberies. *Id.* at 258-59,

265. However, he surmised that two men he recently met named Dave Brown (a heroin dealer) and

John, may have robbed Cutter's Jewelry because he had seen them with a diamond. *Id.* at 259-61,

265, 273. He explained that John looks very similar to him and some of the items found in his

backpack, including the gun, shoes, and glasses belonged to John and Dave. *Id.* at 262-63 & 271-73.[2]

---

[1] OR. REV. STAT. § 132.560(1)(b) provides that an indictment may charge multiple offenses if they are of the same or similar character or based on two or more acts part of a common scheme or plan.

[2] During the prosecution's case, Portland Police Sergeant testified that while in police custody David Brown provided information concerning Petitioner's involvement in the robberies and assisted in the arrest of Petitioner. Tr. Vol. 2 at 178-83, 208-17.

Defense counsel did not question Petitioner about the Portland Swimwear robbery on direct examination. *Id.* at 284.

On cross examination, however, the prosecutor asked Petitioner where he was on the day of the Portland Swimwear robbery. *Id.* at 282. Petitioner asserted his Fifth Amendment right not to testify against himself. *Id.* at 282-83, 290. Outside the presence of the jury, counsel and the court discussed whether the prosecutor's question was outside the scope of direct. *Id.* at 283-86. However, after conferring with Petitioner, defense counsel advised the court that Petitioner did not want to raise an objection, and instead wished to resume testimony. *Id.* at 287-90, 293-95. When questioning resumed, Petitioner immediately admitted to robbing Portland Swimwear. *Id.* at 295-96.

## V.    The Verdict

During closing arguments, counsel addressed the fact that the jury would be returning verdicts on three separate crimes, and that Petitioner's confession to the Portland Swimwear robbery should not impact the verdict on the other two. *Id.* at 314-15, 322. The trial court instructed the jury to the same effect, stating that evidence from one case cannot and must not be used in deciding a different case. *Id.* at 340. The jury convicted Petitioner of Aggravated Theft in the First Degree, and three counts of Robbery in the Second Degree. *Id.* at 353; Resp't Exs. 101 & 131.[3] The trial court sentenced Petitioner to a 210-month term of incarceration. Tr. Vol. 2 at 383-85; Resp't Ex. 101.

Petitioner filed a direct appeal raising multiple assignments of error, including that the trial court erred in denying his motion to sever. Resp't Exs. 103, 104 at 53-69. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Northup*, 217 P.3d 264 (Or. App. 2009), *rev. denied*, 228 P.3d 1214 (Or. 2010).

---

[3] Prior to trial, the Robbery in the First Degree charges were dismissed. Tr. Vol. 1 at 291; Resp't Ex. 125.

Petitioner subsequently sought state post-conviction relief (PCR) on the basis that (1) he received ineffective assistance of trial and appellate counsel; (2) the prosecutor engaged in misconduct; (3) he was deprived of a full and fair appeal; and (4) Ballot Measure 11 is unconstitutional. Resp't Ex. 117. The trial court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Ex. 145 & 146; *Northup v. Coursey*, 329 P.3d 35 (Or. App.), *rev. denied*, 333 P.3d 333 (Or. 2014). During the course of the PCR proceeding, Petitioner and defense counsel submitted contradictory affidavits concerning whether Petitioner had always intended to testify on cross examination that he was guilty of the Portland Swimwear robbery in hopes the jury would find him not guilty of the other two robberies. Resp't Exs. 135 & 138. The PCR court found defense counsel credible, stating that "[c]learly no attorney would have advised this approach." Resp't Ex. 140 at 2.

## DISCUSSION

Petitioner alleges six grounds for relief in his Habeas Petition: (1) Ineffective Assistance of Trial Counsel; (2) "Needlessly Suggestive Identification;" (3) Actual Innocence; (3a) Denial of Right to Full and Fair Appeal;[4] (4) "Ballot Measure 11 is Unconstitutional;" and (5) Ineffective Assistance of Post-Conviction Counsel. Pet'r's Habeas Pet. (ECF No. 2) at 5(a)-5(r).

In his supporting brief, however, Petitioner argues that (1) *the trial court* violated his due process right to a fair trial and his Fifth Amendment right not to be compelled to testify against himself when it refused to sever the three robbery cases; and (2) he was deprived of his right to effective assistance of counsel. Pet'r's Br. in Supp. (ECF No. 33) at 12, 16-18.

///

---

[4] Petitioner alleges two Claims Three. Accordingly, this Court refers to the second Claim Three as "3(a)."

I.    <u>**Trial Court's Denial of Severance**</u>

Petitioner contends he was prejudiced by the joint trial of entirely separate cases because "the combination of nearly identical charges in the three cases risked the reaction that 'well, he must be guilty of something.'" Pet'r's Br. in Supp. at 14. Additionally, Petitioner argues that it "effectively coerced [him] into testifying in an inculpatory fashion as to the swimwear store robbery." *Id.* Respondent moves the Court to deny habeas relief on the basis that this claim was not raised in Petitioner's Habeas Petition and because he has failed to demonstrate the trial court violated clearly established federal law.

A.    <u>**Failure to Raise Claim in Petition**</u>

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides a habeas petition must "specify all grounds for relief" and "state the facts supporting each ground." If a claim is not set forth in the petition, this Court need not address the claim. *See Green v. Henry*, 302 F.3d 1067, 1070 n. 3 (9th Cir. 2002) (holding that court need not consider on appeal claims not raised in the habeas petition); *Casoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (same).

Although Petitioner alleged ineffective assistance of counsel claims concerning the severance issue, Petitioner did not allege a due process claim premised on *trial court error*. Petitioner's reference to a "failure to sever" in his Habeas Petition, when summarizing the claims he presented *on direct appeal to the state court* (*see* Pet'r'r Habeas Pet. (ECF No. 2) at 2), does not suffice to raise the claim to this Court. Accordingly, habeas relief should be denied for failure to comply with Rule 2(c). Nevertheless, this Court addresses Petitioner's claim on the merits and concludes habeas relief is not warranted.

///

**B.**    <u>Lack of Clearly Established Federal Law</u>

Pursuant to 28 U.S.C. § 2254(d), a petition for writ of habeas corpus filed by a state prisoner shall not be granted, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, *clearly established Federal law*;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2) (emphasis added); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014).

"Clearly established Federal law" under 28 U.S.C. § 2254(d)(1) consists of holdings (as opposed to *dicta*) of Supreme Court decisions as of the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). However, a habeas court may look to "Ninth Circuit case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003); *Woods v. Sinclair*, 764 F.3d 1109, 1121 (9th Cir. 2014).

In support of his assertion that the state trial court's denial of his motion to sever violated clearly established federal law, Petitioner cites *Smith v. Phillips*, 455 U.S. 209, 215-17 (1982), and *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968). In *Smith*, the Court addressed jury bias, and in *Bruton*, the Court held the admission of an extrajudicial confession of a defendant in a joint trial violated the co-defendant's right to confront witnesses. Neither case addresses improper joinder of multiple counts against a single defendant.

Petitioner also relies on several Ninth Circuit cases holding that habeas relief is warranted if the joinder of multiple counts results in a fundamentally unfair trial. *See Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2000); *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998); *see*

*also Davis*, 384 F.3d at 638; *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000). Under those cases, the requisite prejudice for a due process violation is a "substantial and injurious effect or influence in determining the jury's verdict." *Sandoval*, 241 F.3d at 772; *Davis*, 384 F.3d at 638. In *Bean*, the Ninth Circuit explained the potential due process ramifications caused by improper joinder of counts for trial:

> [T]here is 'a high risk of undue prejudice whenever . . . joinder of counts allow evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would be otherwise inadmissible. . . . . It is much more difficult for jurors to compartmentalize evidence against separate defendants joined for trial, and by recognizing studies establishing that joinder of counts tends to prejudice jurors' perceptions of the defendant and of the strength of the evidence on both sides of the case.
>
> These concerns resonate with particular force here: not only did the trial court join counts for which the evidence was not cross-admissible, but the State repeatedly encouraged the jury to consider the two sets of charges in concert, as reflecting the modus operandi characteristic of Bean's criminal activities. Thus, the jury could not reasonably have been expected to compartmentalize the evidence so that evidence of one crime did not taint the jury's consideration of another crime, when the State's closing argument and the import of several of the instructions it heard urged it to do just the opposite.

163 F.3d at 1084-85 (quotations and internal citations omitted); *see also Sandoval*, 241 F.3d at 772 (risk of undue prejudice particularly great where joinder allows evidence of other crimes that would otherwise be inadmissible, and where joinder is of a strong evidentiary case with a weaker one).

None of the foregoing Ninth Circuit decisions cite controlling Supreme Court precedent when recognizing a due process right against improper joinder. Nevertheless, they are "persuasive authority" for purposes of determining whether the state trial court's refusal to sever Petitioner's trial is an unreasonable application of Supreme Court law. *Davis*, 384 F.3d at 638. More recently, however, the Ninth Circuit has opined there is no clearly established Supreme Court precedent dictating when a state court must sever criminal charges relating to separate incidents. *Martinez v.*

*Yates*, 585 F. Appx. 460, 460-61 (9th Cir. 2014) ; *Collins v. Uribe*, 564 F. Appx. 343, 343 (9th Cir. 2014); *Hollie v. Hedgpeth*, 456 F. Appx. 685, *1 (9th Cir. 2011).[5] Based on these more recent decisions, this Court concludes Petitioner has failed to demonstrate that the trial court's decision not to sever the three robbery counts was contrary to, or an unreasonable application of *clearly established federal law.* Accordingly, habeas relief should be denied on that basis. Due to the uncertainty of the issue, however, I address whether Petitioner's due process rights were violated under the standards set forth by the Ninth Circuit.

C.    **Petitioner Received a Fundamentally Fair Trial**

Petitioner contends he was prejudiced by the joint trial of the three robbery charges in two ways. "First, the combination of nearly identical charges in the three cases risked the reaction that 'well, he must be guilty of something.'" Pet'r's Br. in Supp. (ECF No. 33) at 14. Second, it is Petitioner's "fundamental contention that, contrary to his trial counsel's representation to the PCR court, he . . . *never intended* to admit to the commission of the robbery of the swimwear store. He asserts he was effectively compelled to do so by a combination of the prosecutor's cross examination of him, the trial court's ultimate ruling, and by his trial counsel's off-the-record advice and actions, prior to that judicial ruling." *Id.* Petitioner concludes "he was not only denied a fair trial but he was effectively coerced into testifying in an inculpatory fashion as to the swimwear store robbery." *Id.*

Petitioner has failed to demonstrate he was denied a fundamentally fair trial *as a result of the trial court's refusal to sever the robbery counts* for several reasons. First, the incriminating evidence

---

[5] It is worthy of note that the Supreme Court's decision in *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986) is not clearly established federal law on this issue because it addressed misjoinder of defendants and not multiple counts against a single defendant. Moreover, in *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010), the Ninth Circuit held that the footnote in *Lane* addressing the due process right is *dicta* and therefore not well established federal law. (*citing Williams*, 529 U.S. at 412).

in each of the robberies was based on equally compelling eye-witness testimony. The three witnesses to the robberies identified Petitioner in the courtroom with certainty, and their testimony was corroborated by other witnesses to the crimes and the physical evidence. Any prejudice caused by the joinder was limited by the trial court's instructions to the jury, at the beginning and end of the trial, directing them to deliberate on each count separately and not to consider evidence on one robbery to determine Petitioner's guilt on another. The properly instructed jury could easily compartmentalize the evidence for each distinct robbery, and nothing said by the prosecutor during opening and closing arguments created an undue risk of prejudice. *See Davis*, 384 F.3d at 639 (noting that jury instructions have a better chance of being effective when each crime is simple and distinct).

Second, Petitioner has failed to demonstrate that improper joinder of the robbery counts effectively coerced him into testifying, and ultimately confessing, to the Portland Swimwear robbery. Although Petitioner first asserted his constitutional right not to testify, and then confessed to the Portland Swimwear robbery, those events were *not* caused by the improper joinder of the charges, but rather by Petitioner's personal trial strategy to testify about two of the robberies and then confess to the third robbery on cross examination in hopes it would convince the jury to find him not guilty of the robberies to which he testified. *See* Resp't Ex. 135 at 2-5; Resp't Ex. 140 at 2. The failure of Petitioner's trial strategy does not give rise to a due process violation.

In sum, Petitioner has failed to prove that the trial court's denial of his motion to sever was contrary to, or an unreasonable application of clearly established federal law because (1) there is no clearly established Supreme Court precedent dictating when a state court must sever criminal charges relating to separate incidents; and (2) he was not denied a fundamentally fair trial. Accordingly, habeas relief is not warranted. *See* 28 U.S.C. 2254(d)(1).

## II.    Ineffective Assistance of Trial Counsel

In his supporting brief, Petitioner argues that trial counsel rendered ineffective assistance of counsel when he failed to (1) renew his motion for severance after the prosecutor's opening and closing statements discussing the similarity of the charges; (2) "object or respond to the state's representation of, or statement regarding, the physical evidence as: '*It's all the same*;'" and (3) impeach the reliability of Sandra Timm's identification testimony. Pet'r's Br. in Supp. at 16-18 (emphasis in original). Petitioner argues that "[c]onsidered individually or collectively, trial counsel's various failures amount to ineffective assistance of counsel." *Id.* at 18.

A claim of ineffective assistance of counsel requires Petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams*, 529 U.S. at 390-91; *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987).

To prove deficiency of performance, Petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 688. This Court's review of a claim of ineffective assistance of counsel is "doubly deferential" in that the Court takes a highly deferential look at counsel's performance under the deferential lens of § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011); *Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015). When applying this standard, it is not for this Court to second guess trial counsel's strategic decisions. *Strickland*, 466 U.S. at 689; *Elmore v. Sinclair*, 799 F.3d 1238, 1250 (9th Cir. 2015), *pet. for cert. filed* (Jan. 27, 2016) (No. 15-7848); *see also Zapien*, 805 F.3d at 872 (strategic decisions, based on a thorough investigation of the law and facts, are virtually unchallengeable).

"To establish prejudice [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694); *Pinholster*, 563 U.S. at 189. In the context of a failure to raise an objection, a habeas petitioner must demonstrate that trial counsel's failure fell below an objective standard of reasonableness and that, had the objection been made, there is a reasonable probability that the objection would have been sustained and the outcome of the trial would have been different. *Flournoy v. Small*, 681 F.3d 1000, 1005-06 (9th Cir. 2012); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079-80 (9th Cir. 2000).

### A.    Failure to Renew Motion for Severance

Petitioner contends that trial counsel was ineffective for not renewing his motion to sever or moving for a mistrial after the prosecutor's opening and closing statements. Petitioner argues the prosecutor "described the offense conduct and the resulting identifications as same and similar" and gave a "not-so-subtle directive to the jury that it should treat all the instances of alleged robbery the same and convict on everything." Pet'r's Br. in Supp. at 17. Petitioner concludes the prosecutor "effectively nullified" the trial court's admonition not to consider the evidence of one case as proof for another. This Court disagrees.

During opening statements, the prosecutor outlined the evidence of each robbery and the victims' description of the robber:

> This is a little bit more unusual because there are three cases that are going to be presented to you, and as the Judge just said. You need to -- we're going to try and parcel these out, one, two, three, so that you don't get confused. We'll start with the first case, we'll move to the second, and then the third.
>
>     The first case is [the] Cutter's Jewelry robbery. You'll hear evidence from Sandra Timm. . . . And she'll tell you that she was at work that day; that a man came into the store that she did not know. . . .
>
>     . . . . He sits down across from a counter where's there's jewelry. . . . this person has a hat on, glasses, jewelry, and a bag.
>
>     . . . .

I'm now moving on to the second case. . . . It's at a swimwear store. Amy Stell is working there . . . . January 17th, around 4 o'clock in the afternoon, a man walks in.

*Same general description as the man from the previous case*. But it's an older man . . . .

. . . .

January 22nd, 2006, Pasta Bangs is a restaurant on North Mississippi here in Portland. . . . It was around 8:30 or 9 o'clock at night. They were getting close to closing, and a man walks in. *Similar description*. An older man, forties, fifties, comes in.

. . . .

And the detective went out to, first, Sandra Timm from the Cutter's robbery. Showed her the photo montage. She studied it carefully, and said, boom, "That's the guy." She picked the defendant out of the photo montage.

Same thing with Amy Stell down at Portland Swimwear. They showed her the photo montage. And it's about at least 10 days later, showed her the photo montage. She looks at it, boom, "Definitely." It's the defendant. She picks him out immediately.

Then there's the Pasta Bangs robbery. Stacey Furniss, and you'll hear from her. She had the best opportunity to observe who this person was. They showed her the photo montage. She's like, "Totally the guy." She knows it is this guy. And she picks out the defendant out of a photo montage.

Tr. Vol. 2 at 10-18 (emphasis added).

In closing statements, the prosecutor cautioned the jurors not to draw inferences from

Petitioner's confession to one robbery when determining his guilt of the other two:

Mr. Northup took the stand, and he admitted that he committed the Portland Swimwear robbery, and the tendency by juries is to think, "Well, let's split the baby," and will say, "Okay. Guilty on that. We'll find him [sic: not] guilty on something else." That's a tactic that's used very often. Don't fall for that. Don't split the baby. He's clearly guilty.

You will hear an instruction you have to look at each case separately and look at the evidence in each case, and I suspect that when you go back there, you will look at all the evidence that's been presented.

*Id.* at 627.

Petitioner has failed to demonstrate the foregoing statements provided sufficient grounds for a renewed motion for severance or mistrial. On the contrary, the prosecutor referenced the trial court's cautionary instruction to consider each charge separately, and organized her argument sequentially to enable the jury to compartmentalize the evidence. Moreover, defense counsel attested at the PCR proceeding that, based on his trial experience, a renewed motion for severance would have been denied and tactically a motion for mistrial would not have benefitted Petitioner:

> The case law favors joinder, and my experience has shown that Multnomah County was not likely to grant severance with the same or similar charges involved. I have no reason to believe that additional arguments, or renewing the motion, would have changed the trial court's decision. The trial court instructed the jurors to consider each case separately, and I saw no evidence that the jurors failed to follow the court's instructions.
>
> . . . .
>
> It was my professional assessment that the Deputy District Attorney's opening statement did not contain sufficient grounds for a mistrial. . . . . Also, a mistrial, if granted, could have yielded a jury less favorable to the defense and increased the likelihood of conviction.

Resp't Ex. 135 at 2, 4.

The PCR court rejected Petitioner's ineffective assistance of counsel claim on the basis that the three robbery cases were properly consolidated and there were no grounds for mistrial based on the deputy district attorney's opening and closing arguments. Resp't Ex. 140 at 2. To the extent those underlying holdings are premised on the construction of state law, this Court defers to the state law rulings. *Woods*, 764 F.3d at 1138-39. In any event, this Court's review of the record confirms that the prosecutor's isolated statements regarding the "similarity" of the victims' descriptions of the robber, and her admonition to the jury not to "split the baby," did not "nullify" the court's jury instructions or otherwise provide a basis for a mistrial. Rather, she provided an appropriate summary

Page 16 - FINDINGS AND RECOMMENDATION

of the evidence and rebutted defense counsel's suggestion that there was only sufficient evidence to convict Petitioner of the Portland Swimwear robbery because he confessed to that robbery. *See* Tr. Vol. 2 at 314-15. Accordingly, Petitioner has not demonstrate that counsel's performance was deficient, or that he suffered prejudice as a result of counsel's strategic decision not to renew his motion to sever or move for a mistrial. The PCR court's rejection of this claim is not contrary to, or an unreasonable application of, clearly established federal law.[6] *See* 28 U.S.C. § 2254(d)(1).

### B. Failure to Object to Statement "It's all the same"

At trial, Christopher Godfrey testified to his observations during the Pasta Bangs robbery. Godfrey testified he was working on the day of the robbery and took particular notice of the robber's gun. Tr. Vol. 2 at 128-132. Godfrey testified the gun was an automatic and resembled one used by German soldiers in World War II. *Id.* Godfrey describe the distinguishing features of the gun as a strip/ridge along the side of the pistol, a circle at the top, and a short barrel. *Id.* at 137. Godfrey drew a picture of the gun that was later admitted into evidence. *Id.* at 135, 138. When Godfrey was shown a photograph of the gun found in Petitioner's backpack, Godfrey testified it "very strongly" resembled the robber's gun. *Id.* at 136-37; *see also* Tr. Vol. 2 at 163.

During closing arguments, the prosecutor referenced Godfrey's testimony as follows:

> [H]e focused explicitly on the gun. He just focused on that. In fact, he made a really great little drawing of the gun that he saw. Although he said he's not familiar with guns, you'll notice when you take the evidence in the back and you look at the gun, compared it to the photograph, pretty good. Pretty good for someone who sees a gun and then it's gone.

---

[6] Because this claim lacks merit, this Court need not address the more complex issue of whether Petitioner procedurally defaulted the claim. *See* 28 U.S.C. § 2254(b)(2); *Henry v. Ryan*, 720 F.3d 1073, 1079-80 (9th Cir. 2013) (applying § 2254(b)(2) to a procedurally defaulted claim).

> You'll notice that it doesn't work. It's non-functioning. Exactly how it was sort of the description of the gun. ***Everything is the same.*** Just happens to be in the defendant's possession. Of course, he says he just got it a day ago.

*Id.* at 305 (emphasis added).

In the instant proceeding, Petitioner contends trial counsel was ineffective "when he failed to object or respond to the state's representation of, or statement regarding, the physical evidence as: '*It's all the same.*' Just happens to be in the defendant's possession." Pet'r's Br. in Supp. at 18. Petitioner reasons the prosecutor's statement is not accurate "regarding the physical evidence seized [from] him . . . . [and] buttresses his claim that counsel should have moved for a mistrial or renewed his motion for severance due to the remark's effect on the jury to let the evidence of one case impact them all". *Id.*

Petitioner's claim is premised on the assumption that the Prosecutor's statement was referencing all of the physical evidence in the case. However, when her statement is viewed in context it is apparent she was simply making a comparison between Godfrey's drawing and the photograph of the gun seized from Petitioner's backpack. Petitioner offers no basis for an objection to this line of argument, and there is no reasonable probability that, had an objection been made, it would have been sustained and the result of the proceeding would have been different. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel is not constitutionally deficient for failing to make a meritless objection). Accordingly, the state court's rejection of this claim is neither contrary to, or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

### C.   Failure to Impeach Sandra Timm

Finally, Petitioner contends defense counsel was ineffective for failing to effectively impeach Sandra Timm "by showing suggestiveness elements in the pretrial identification and the unreliability

of her ultimate courtroom identification of Mr. Northup." Pet'r's Br. in Supp. at 18. Petitioner

explains that Timm's identification was unreliable because she testified at a pre-trial hearing that

"when viewing the montage, she was looking for a man with a thin face and that she picked

photograph number five, in part, because "[t]he others are too heavy." *Id.*[7] Respondent moves the

Court to deny habeas relief on the basis that (1) the claim was not alleged in the Habeas Petition; (2)

the claim is procedurally defaulted because it was not raised to the Oregon Supreme Court; and (3)

it lacks merit.

A review of Petitioner's Habeas Petition reveals he did not allege an ineffective assistance

of counsel claim premised on counsel's failure to effectively cross exam Timm. Accordingly, habeas

relief should be denied on that basis. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in

the United States District Courts; *Green*, 302 F.3d at 1070 n. 3; *Casoperdo*, 37 F.3d at 507.

Additionally, Petitioner procedurally defaulted the claim by failing to raise it in his Third Amended

Petition for Post-Conviction Relief (Resp't Ex. 117), or on appeal therefrom (Resp't Ex. 141, 142

& 144). *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (petitioner satisfies exhaustion

requirement by raising it on every level of the state appellate process). Petitioner has not argued

otherwise, nor has he demonstrated any basis to excuse his procedural default. Accordingly, habeas

relief is precluded. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (habeas review of

procedurally defaulted claims is barred absent showing of cause for the procedural default and actual

prejudice, or that the failure to consider the claims will result in a miscarriage of justice).

---

[7] Prior to trial, defense counsel moved to suppress identifications made by the three victims using photo montages compiled by the Portland Police on the basis that the montage included only one man remotely similar to him. Resp't Ex. 124 at 10-11; Tr. Vol. 1 at 18-19, 255-57. The trial court denied Petitioner's motion to suppress. Resp't Ex. 128.

Finally, the claim fails on the merits because a review of the trial transcript reveals that defense counsel did cross examine Timm to highlight her selection of Petitioner's photograph was done through a process of elimination. During direct examination, Timm testified she selected Petitioner's picture from a six-person photo montage because four of the men were too heavy, and one was thin but "[h]is face was all wrong." Tr. Vol. 2 at 39. However, Timm also testified she was one-hundred percentage certain of her selection of Petitioner's picture based on "the shape of [his] eyes, the shape of his face . . . and his nose." *Id.* at 39-40. On cross examination, defense counsel thoroughly questioned Timm about her selection process and ultimately obtained her agreement that it was a process of elimination. *Id.* at 51. During closing arguments, defense counsel questioned the fairness of the photo montages given the fact that only two of the pictures were of men with narrow faces. *Id.* at 312-13.

Petitioner fails to explain what more defense counsel should have done when cross-examining Timm. Accordingly, Petitioner has failed to demonstrate counsel's conduct fell below an objective standard of reasonableness or, given the overwhelming evidence against Petitioner, that he suffered prejudice. *See Strickland,* 466 U.S. at 696 (when evaluating proof of prejudice, habeas court considers the totality of the evidence before the jury). Moreover, reviewing all of Petitioner's claims as a whole, he has failed to demonstrate cumulative error so prejudicial as to require reversal. *See Cunningham v. Wong,* 704 F.3d 1143, 1165 (9th Cir. 2013).

### III.    Unargued Claims/Request for Evidentiary Hearing

Petitioner does not address the remaining claims in his Habeas Petition. I have reviewed the claims, without additional argument from Petitioner, and conclude he has failed to sustain his burden of proving that habeas relief is warranted. *See Lambert v. Blodgett,* 393 F.3d 943, 970 n. 16 (9th Cir. 2004) (petitioner bears burden of proving his case).

Petitioner seeks an evidentiary hearing to "substantiate his claim." Pet'r's Br. in Supp. at 19. A habeas petitioner is entitled to an evidentiary hearing if he establishes a colorable claim for relief and that he was not afforded a full and fair state hearing to develop his claim. *Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir.2005); *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005); *West v. Ryan*, 608 F.3d 477, 484-85 (9th Cir. 2010). To allege a colorable claim, he must allege facts that, if true, would entitle him to habeas relief. *Insyxiengmay*, 403 F.3d at 670; *West*, 608 F.3d at 485; *Stokley v. Ryan*, 659 F.3d 802, 811 (9th Cir. 2011).

Petitioner requests an evidentiary hearing to "testify as to the unfairness he faced during his post-conviction case" and to "admit additional original police reports to prove his counsel failed to properly and effectively impeach the State's eyewitness testimony." Pet'r's Br. in Supp. at 19. Petitioner would testify to the unfairness of his PCR proceeding and "explain, *inter alia*, that when his post-conviction trial began, he did not even know that an affidavit from Mr. Bethune had been submitted" or that "the State has responded to his claims." *Id.* Petitioner argues he was "materially hindered in his ability to present a meaningful rebuttal to Bethune's rendition of events and the state's legal arguments." *Id.* Petitioner's assertion, however, is belied by the state PCR record.

At the PCR hearing, Petitioner raised the fact that he did not receive a copy of the state's trial memorandum until the day before the hearing, and he did not have the opportunity to depose trial counsel about the statements in his affidavit. Resp't Ex. 139, Vol. 4 at 43-46. However, Petitioner subsequently declined the court's offer of a continuance, stated that he would testify in response to defense counsel's affidavit, was allowed to give a closing argument at which time he attacked the content of the counsel's affidavit, and advised the court he did not want additional time to respond to the state's memoranda. *Id.* at 47-48, 74-78, 80-81; Resp't Ex. 138.

Accordingly, this Court concludes Petitioner has failed to demonstrate he was denied a full and fair hearing to develop any of his claims. Moreover, Petitioner makes no showing that additional testimony would produce anything more than what is already in the state record. *See Griffin v. Johnson*, 350 F.3d 956, 966 (9th Cir. 2003) (denying evidentiary hearing because it would not produce evidence more reliable or more probative than the testimony and affidavits already presented).

Finally, an evidentiary hearing is not warranted to afford Petitioner the opportunity to offer "additional original police reports," to "prove that his counsel failed to properly and effectively impeach" Sandra Timm because (1) the claim is procedurally defaulted; and (2) Petitioner has failed to demonstrate diligence and the existence of clear and convincing evidence that, but for constitutional error, no reasonable juror would have found him guilty of robbery. *See* 28 U.S.C. § 2254(e)(2).

## CONCLUSION

Based on the foregoing, Petitioner's Habeas Petition (ECF No. 2) should be DENIED, and this proceeding should be dismissed, with prejudice. Additionally, a Certificate of Appealability should be DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the

response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 8th day of August, 2016.

Paul Papak
United States Magistrate Judge